UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TETYANA DORSANEO,

Plaintiff,

v.

EDWARD MATTHEW DORSANEO,

Defendant.

Case No. 17-cv-00765-VC

**ORDER GRANTING THE MOTION FOR LEAVE TO AMEND AND THE MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

Re: Dkt. Nos. 25, 32

Tetyana Dorsaneo, a lawful permanent resident residing in the United States, filed this suit against Edward Dorsaneo, her ex-husband, to enforce a Form I-864 affidavit of support. An I-864 is a contract between the government and the sponsor of a person seeking to immigrate to the United States, in which the sponsor agrees to provide the immigrant the support necessary to maintain her income at not less than 125 percent of the federal poverty limit. 8 U.S.C. § 1183a. Tetyana's complaint alleges that Edward signed an I-864 in connection with her application for adjustment of status, that his duty to provide support commenced when she obtained legal permanent resident status on February 5, 2014, and that he breached his obligation by failing to support her. After Edward answered the complaint, Tetyana filed a motion for judgment on the pleadings. Edward opposed the motion and filed a motion for leave to amend his answer.

The motion for leave to amend the answer is granted. Therefore, the pleadings now include the amended answer. In the amended answer, Edward admits he signed the I-864 as part of his petition for Tetyana's adjustment of status. *See* Amended Answer ¶ 23.[1] Edward does not

---

[1] Edward attached to his answer an exhibit he alleged to be a "true and accurate copy of the I-864 Affidavit." The Court will therefore treat this document as part of the answer. *United States v.*

contest that he has not paid Tetyana any financial support.  *See Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982) ("For purposes of determining whether a material issue of fact exists, uncontested allegations to which a party had an opportunity to respond are taken as true.").  His argument is that he has no obligation to pay, or should be excused from any such obligation, because he signed the I-864 in reliance on Tetyana's statement to him that she wanted to "create a family" with him, and this statement turned out not to be true.  Edward alleges that Tetyana knew her statements about wanting to create a family were false when she made them, and that she said those things to persuade Edward to help her immigrate to the United States. These allegations form the basis for three affirmative defenses asserted in Edward's answer: fraud in the inducement, estoppel, and fraud in the execution.

Fraud in the inducement cannot be a defense to an I-864 enforcement action.  Permitting a sponsor to evade his support obligation by asserting a defense of fraud in the inducement is inconsistent with the purpose of the I-864 requirement, because it would place lawful permanent residents at risk of becoming dependent on the government for subsistence.  The statute and implementing regulations show that the purpose of the support obligation is to ensure that family-sponsored immigrants do not become a "public charge."  8 U.S.C. § 1183a.  The support obligation terminates only after the immigrant has obtained citizenship or circumstances have changed such that the immigrant no longer requires support.  *See* 8 C.F.R. § 213a.2(e) (providing that the support obligation terminates when the sponsored immigrant:  (1) becomes a citizen; (2) has worked 40 qualifying quarters of coverage; (3) ceases to be a lawful permanent resident and departs the United States; (4) obtains a new grant to adjustment of status, supported by a new affidavit of support; or (5) dies).  Furthermore, the support obligation cannot be disavowed unless the sponsor submits the disavowal in writing "before the decision on the adjustment application."  *Id.* § 213a.2(f).  A Congressional committee report describes the affidavit support requirement as a plan to "discourage[e] welfare-based immigration" and "to provide for the

---

*Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

economic well-being of the members [that families] bring into the United States."  H. Comm. On Budget, Welfare and Medicaid Reform Act of 1996, H.R. Rep. 104-651, at 6 (1996).  It also explains that the sponsorship agreement "would be made legally binding and would apply until the immigrant becomes a citizen."  *Id.* at 1327.  These requirements, and this history, show that the support obligation, once undertaken, cannot be excused unless there is no longer a risk that the I-864 beneficiary will become a public charge.

Moreover, the defense of fraudulent inducement only renders a contract voidable; to escape the contract obligations, an aggrieved party must rescind the contract.  Restatement (Second) of Contracts § 164.  The statute nowhere suggests that sponsors may seek – or that courts may exercise their equitable power to grant – a rescission remedy in an action to enforce an I-864.  This, too, supports the idea that sponsors may not avoid their support obligations by raising the defense of fraudulent inducement.

Existing Ninth Circuit precedent indirectly supports this notion as well.  Specifically, the Ninth Circuit has held that a premarital agreement does not terminate an obligation of support, explaining that "[t]he right of support conferred by federal law exists apart from whatever rights [a sponsored immigrant] might or might not have under [state] divorce law."  *Erler v. Erler*, 824 F.3d 1173, 1177 (9th Cir. 2016) (alteration in original) (quoting *Liu v. Mund*, 686 F.3d 418, 419-20 (7th Cir. 2012)).

It does not appear that any court has held to the contrary.  A handful of district courts have touched on the question whether fraudulent inducement is a viable defense to an I-864 enforcement action, but all those cases appear to have been resolved based on a lack of evidence of fraud, with some suggesting that even if there was such evidence the sponsor would remain obligated to pay, and others suggesting in dicta that such evidence would lift the obligation. *Compare Shah v. Shah*, No. 12-cv-04648, 2013 WL 12157867, at *4 n.9 (D.N.J. Oct. 28, 2013) ("It is not clear that allowing a sponsor to avoid his obligation under the affidavit would serve Congress's purpose in providing for I-864 affidavits, as the sponsored immigrant might end up as a public charge."), *with Matloob v. Farhan*, No. 11-cv-01943, 2014 WL 1401924, at *3 (D. Md.

Apr. 9, 2014) ("Where a sponsored immigrant 'never intended to enter into a lasting marital relationship, but was merely using the sponsor to gain immigrant status,' it could be argued that the marriage was the result of fraudulent inducement on the part of the sponsored immigrant.") (quoting *Cheshire v. Cheshire*, No. 05-cv-00453, 2006 WL 1208010, at *4 (M.D. Fla. May 4, 2006)). The better argument is that even if the sponsor presents legitimate evidence of fraudulent inducement, he has borne the risk of being fraudulently induced into sponsoring someone, and must satisfy his financial obligations regardless.

Estoppel, another of Edward's affirmative defenses, fails for the same reason. The defense is not authorized by the statute or its implementing regulations, and allowing it interferes with the purpose of the I-864 affidavit requirement.

Unlike fraud in the inducement or estoppel, fraud in the execution arises when "a party executes an agreement 'with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms.'" *Sw. Admin. Inc. v. Rozay's Transfer*, 791 F.2d 769, 774 (9th Cir. 1986). It holds the potential to render a contract void from the start. *Id.* There's no need to address whether such a defense is available in I-864 enforcement actions because Edward's allegations foreclose the possibility of fraud in the execution. Edward hasn't alleged that, at the time he executed the Form I-864, he didn't know what he was signing. To the contrary, he has alleged that, in the course of petitioning for Tetyana's adjustment of status, he and Tetyana attended an initial interview with a government employee during which the employee explained that the I-864 "was for possible reimbursement to the government if Plaintiff collected social services from the government." Amended Answer ¶ 24. This forecloses any defense based on the assertion that Edward thought he was signing some other contract.

It is thus clearly established from the pleadings that, starting on February 5, 2014, Edward owed Tetyana financial support and he has breached that duty by failing to pay. However, the pleadings do not establish the absence of a terminating event (as set forth in the regulations) sometime after Edward's support obligation commenced. Nor do they establish an answer to the question whether Edward may offset the support obligation by any income Tetyana

has earned.  *See Erler*, 824 F.3d at 1179-80.  Therefore, the motion for partial judgment on the pleadings is granted on Edward's breach of his I-864 support obligation.[2]  Discovery must proceed on the amount of financial assistance Edward owes, and that question must be resolved either on summary judgment or at trial.

   **IT IS SO ORDERED.**

Dated: July 31, 2017

_____
VINCE CHHABRIA
United States District Judge

---

[2] To the extent Edward moves to dismiss the complaint for failure to state a claim under Rule 12(c), the motion is denied.